IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY DALE RUSSELL, #112117, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )  CASE NO. 1:20-CV-637-ECM-SMD ) |
| SGT. BLUE, et al., | ) ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Plaintiff Anthony Dale Russell, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging his constitutional rights[1] were violated when he was issued a disciplinary for smoking in an unauthorized area at Elba Community Based Facility. *See* Doc. 1. Plaintiff brings this suit against Correctional Sergeant Billy Blue, Correctional Officer Andre Dubose, and Correctional Officer Danny Fleming in their individual and official capacities. *Id*. at 1, 2; Doc. 10 at 1. As relief, he seeks "to allow these proceeding to move forward, were-as the Defendants have to answer my request of production of document, answer interrogatories, allow truth to pervail [sic]." Doc. 1 at 4.

On September 22, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims (Doc. 5), which Defendants did on December 2, 2020 (Doc. 10). In their Special Report, Defendants move for summary judgment and

---

[1] Plaintiff does not make clear what specific rights he believes have been violated. *See generally* Doc. 1.

provide evidentiary materials in support. *Id*. at 16; Docs. 10-1 through 10-4. On December 3, 2020, the Court issued another Order directing Plaintiff to file a response to Defendants' filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 11. The Court received Plaintiff's response on February 1, 2021. Doc. 21. Thereafter, upon Plaintiff's requests for discovery and subsequent Court orders, Defendants filed additional evidentiary materials. Docs. 22, 23, 24, 25, 28.

In its December 3 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Special Report and Plaintiff's response as a motion for summary judgment and response. Doc. 11 at 3. No objections were filed. Thus, the undersigned will now construe the Special Report as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendants.

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496

(11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   RELEVANT FACTS[2]

The following facts derive from Plaintiff's verified Complaint (Doc. 1) and the sworn or verified evidentiary materials proffered by Defendants (Docs. 10-1 through 10-4; 22-1; 23; 24, 25; 28-1 through 28-3). Although Plaintiff also filed a response to Defendants' Special Report (Doc. 21), the Court cannot consider the allegations therein in deciding summary judgment because the response is neither sworn nor properly verified in accordance with 28 U.S.C. § 1746.[3]

The Complaint contains the following allegations in their entirety:

> [In December 2018,] [t]he inst. sold Plaintiff tobacco then wrote disciplinary for smoking said tobacco.
>
> [Defendant] Fleming wrote myself [] and other[]s disciplinaries for disobeying a direct order/smoking in a non-smoking fac. Elba Work Release is a smoking fac. It sell tobacco product sold tobacco product that morning. Never been non-smoking.
>
> [Defendants] extorted Plaintiff money.
>
> These Defendant put into methods of actions to extort [Plaintiff's] money through the sale of tobacco products. Conspired as a unit to write disciplinaries with baseless merits, and continuoisly [sic] haress [sic],

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[3] *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (noting that omission of the phrase "under penalty of perjury" would "allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods"); *Grupo Rayco C.A. v. Delta Air Lines, Inc.*, No. 1:20-CV-1952, 2021 WL 1351859, at *9 n. 3 (N.D. Ga. Mar. 16, 2021) ("By omitting the requisite language stating that the certification was made 'under penalty of perjury,' counsel has failed to substantially comply with [§ 1746].").

> intimandate [sic] [Plaintiff] with threat[]s to coer./convince indv. for guilty pleads.
>
> Abuse of authority, using entrapment principal, violating S.O.P. Rule & Policies of Admin. 403.
>
> These veteran officer[]s/defendant continue this pratice [sic] for over a week, through different covert action with before and after thought well aware of there [sic] intent and purpose.

Doc. 1 at 2–3.

In response, Defendants' evidence sets forth the following version of events:

On December 24, 2018, Defendant Fleming observed nine inmates—including Plaintiff—standing at the "weight pile area" smoking cigarettes. Docs. 10-2 at 1; 10-4 at 1. The weight pile area is not, and has never been, an authorized smoking area at Elba. Docs. 10-2 at 1; 22-1 at 10; 28-1 at 1; 28-2 at 1. Elba has only one designated smoking area—the back yard, not the weight pile—that can be opened or closed at the discretion of prison officials. Docs. 10-3 at 1; 22-1 at 10; 28-1 at 1. Indeed, the Elba Institutional Rules and Regulations manual specifically provides:

> The only area designated as a smoking area is on the back yard and is labeled as such. All other areas of the facility are designated as non-smoking areas. Anyone violating the policy will be disciplined in accordance with Administrative Regulation 403: Procedures for Inmate Rule Violations.

Doc. 22-1 at 10. Inmates are instructed on the location of the designated smoking area upon arrival at Elba during orientation. Docs. 28-1 at 1; 28-2 at 1. Supervisors are permitted to close the designated smoking area for multiple reasons, such as when inmates in the Restrictive Housing Unit are removed for exercise, when it needs to be cleaned, and when it impedes orderly operation of the institution. Docs. 28-1 at 1–2; 28-2 at 1; *see also* Doc.

23 at 7 (providing that "[s]ometimes the backyard smoking area is off limits for cleaning, maintenance, etc."). Defendant Blue had previously instructed all inmates via intercom that the designated smoking area was off limits that day. Docs. 10-2 at 1; 10-3 at 1; 28-1 at 2; 28-2 at 1– 2.

Defendant Fleming verbally reprimanded each of the inmates—including Plaintiff—and told them that disciplinary action would be initiated for Rule Violation 925 – Failure to Obey a Direct Order of an ADOC Employee. Docs. 10-2 at 1; 10-3 at 2. Defendant Fleming cited Plaintiff with the rule violation and notified Defendant Blue of the incident. Docs. 10-2 at 1; 10-3 at 1–2. On January 5, 2019, a disciplinary hearing was held for Plaintiff. Doc. 10-4 at 2. Samuel M. Ferrell, who is not a named defendant in this action, served as the hearing officer. *Id*. Plaintiff was found guilty of smoking in an unauthorized area in violation of Rule 925 – Failure to Obey a Direct Order of an ADOC Employee. *Id*. at 3. As sanctions, Plaintiff lost canteen, telephone, and visiting privileges for 45 days and was given two extra hours of duty per day for 45 days. *Id*. Defendant Dubose had no involvement in citing Plaintiff for a rule violation or in Plaintiff's subsequent hearing; he was not the arresting, serving, or hearing officer for the disciplinary at issue. Doc. 10-1 at 1.

### IV. DISCUSSION

#### a. **Defendants are entitled to sovereign immunity.**

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh

7

Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.[4] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

  **b.**  **Defendants are entitled to qualified immunity.**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S.

---

[4] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983."); *Dees v. Lamar*, No. 2:20-CV-1326-LSC-GMB, 2021 WL 1953137, at *5 (N.D. Ala. Mar. 4, 2021) ("Prison wardens and their officers, all of whom are employed by the Alabama Department of Corrections, are state officials[.]") (citing *Jacoby v. Thomas*, No. 18-14541-C, 2019 WL 5697879, at *1 (11th Cir. Oct. 16, 2019)).

800, 818 (1982)). Qualified immunity is not merely a defense against liability but a true immunity from suit, and the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted).

To receive qualified immunity, a defendant first must prove that he was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The record establishes that Defendants were acting within the course and scope of their discretionary authority when the challenged conduct occurred. Thus, the burden shifts to Plaintiff to present evidence that Defendants are not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet this burden, Plaintiff must demonstrate that (1) Defendants committed a constitutional violation; and (2) the constitutional right Defendants violated was "clearly established." *Id.*; *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. [] In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted). The Court may analyze these elements "in whatever order is deemed most appropriate for the case," and a finding of qualified immunity is appropriate if sufficient evidence has not been presented as to any one of the elements. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

Upon consideration of this record, the undersigned finds that Plaintiff has wholly failed to demonstrate that any Defendant committed a constitutional violation. Although the Complaint does not make clear under what legal authority Plaintiff purports to bring his claims, construing Plaintiff's *pro se* pleading liberally, the Court interprets his allegations as attempting to state a conspiracy and due process claim. However, Plaintiff has failed to establish a genuine issue of material fact as to either claim sufficient to overcome qualified immunity or summary judgment.

### i.  Conspiracy Claim

First, Plaintiff appears to allege—albeit vaguely and unclearly—that Defendants have engaged in a conspiracy to sell tobacco products at Elba for the purpose of extorting inmates' money and then disciplining inmates when those products are used. *See* Doc. 1 at 2–3. To establish a viable conspiracy claim under § 1983, a plaintiff must demonstrate that "(1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008)). The plaintiff must make particularized allegations that a conspiracy exists; vague and conclusory allegations suggesting a conspiracy are insufficient. *See Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) (citations omitted). Moreover, "merely string[ing] together" discrete acts of individuals fails to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff has failed to present any allegations or evidence sufficient to demonstrate Defendants "reached an understanding or agreement" to violate his rights. Plaintiff alleges simply that Defendants "put into methods of actions to extort [Plaintiff's] money through the sale of tobacco products" and "[c]onspired as a unit to write disciplinaries with baseless merits, and continuosily [sic] haress [sic], intimandate [sic] [Plaintiff] with threat[]s to coer./convince indv. for guilty pleads." Doc. 1 at 3. However, his single, bare allegation that Defendants conspired to harass and intimidate him is far too vague and conclusory to demonstrate a conspiracy claim. *See Hansel*, 132 F. App'x at 310 (finding plaintiff's allegation that defendants "participated in a civil conspiracy" insufficient); *see also Ellis*, 432 F.3d at 1326 ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

Moreover, it is clear on this record that Plaintiff's disciplinary was not baseless. The undisputed evidence demonstrates that the weight pile area is not, and has never been, an authorized smoking area at Elba; that Plaintiff was informed the weight pile area is not an authorized smoking area; and that Plaintiff nevertheless smoked in or around the weight pile area. *See* Docs. 10-2; 10-3; 22-1; 28-1; 28-2. To the extent Plaintiff takes issue with the fact that tobacco products are sold at Elba and the single designated smoking area at Elba is periodically closed, that does not constitute a constitutional violation. *See, e.g., Wallace v. Louisiana*, 689 F. App'x 286 (5th Cir. 2017) (affirming dismissal of complaint, in which inmate plaintiff alleged no-smoking policy at state correctional facility violated his constitutional rights, as frivolous); *Mauchlin v. Hood*, 167 F. App'x 735, 736 (10th Cir. 2006) (affirming dismissal of complaint, in which inmate plaintiff alleged a complete ban

11

on use of tobacco products in federal prison violated his constitutional rights, as frivolous and noting that "inmates have no constitutional right to smoke in prison") (citations omitted); *Grass v. Sargent*, 903 F.2d 1206 (8th Cir. 1990) ("There is no constitutional right to smoke in prison.") (citation omitted).

Accordingly, because Plaintiff has wholly failed to demonstrate that Defendants reached an understanding or agreement to deny him one of his constitutional rights, Defendants are entitled to qualified immunity and their motion for summary judgment is due to be GRANTED as to any purported conspiracy claims.

### ii. Due Process Claim

The Court further interprets Plaintiff's allegation that the disciplinary he was issued had "baseless merit[]s" as attempting to state a violation of due process. However, to succeed on a due process claim, Plaintiff must first demonstrate the existence of a protected liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Eleventh Circuit has made clear that there are only two instances in which a prisoner may be deprived of a due process liberty interest under § 1983:

> The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1290–91 (11th Cir. 1999) and *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

"In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

In this case, Plaintiff was deprived of canteen, telephone, and visiting privileges for 45 days. Doc. 10-4 at 3. However, none of these deprivations amount to a Constitutional or state-created liberty interest. First, the Constitution does not provide an inmate a right to canteen, telephone, or visitation privileges. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460–61 (1989) (explaining that an inmate does not have a protected interest in visitation arising from the due process clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134 (2003) (upholding a two-year restriction on visitation privileges and noting that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior"); *Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 F. App'x 890, 894 (11th Cir. 2015) (upholding a one-year restriction on visitation privileges and noting that plaintiff "did not have a protected liberty interest in unfettered visitation privileges while in prison"); *Walker v. Loman*, Case No. 2:06-CV-896-WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (holding that 90-day loss of store, telephone, and visitation privileges did not result in the deprivation of a liberty interest nor did it rise to the level of cruel and unusual punishment). Second, there is no state-created liberty interest in canteen, telephone, or visitation privileges in Alabama. *See Dumas v. State*, 675 So.2d 87, 88–89 (Ala. Crim. App. 1995).

Plaintiff also received two extra hours of duty per day for 45 days. Doc. 10-4 at 3. This imposition also fails to implicate a Constitutional or state-created liberty interest. *See*

13

*Spinks v. Bailey*, Case No. 5:15-CV-1580, 2016 WL 4578339, at *4 (N.D. Ala. June 24, 2016) ("[T]he Supreme Court and Eleventh Circuit have never found liberty interests arising from the due process clause in connection with the temporary institution of extra duty[.]"); *Zamudio v. State*, 615 So. 2d 156, 157 (Ala. Crim. App. 1993) ("Store and telephone privileges are not liberty interests, nor does a prisoner have a right not to have extra work duty imposed."); *Summerford v. State*, 466 So. 2d 182, 185 (Ala. Crim. App. 1985) ("Based on the reasoning of . . . United States Supreme Court cases, we do not believe [a plaintiff has] a 'liberty interest' protected under the due process clause in maintaining his store privileges or in being unburdened by an extra work detail.").

Thus, even if the merits of Plaintiff's disciplinary were indeed baseless—and, as explained above, the record demonstrates that they were not—he has nevertheless failed to demonstrate a due process violation. Even if the factual basis for the disciplinary was unsubstantiated, as Plaintiff appears to claim, he has not been deprived of any Constitutional or state-created liberty interest as a result.[5] Accordingly, Defendants are entitled to qualified immunity and their motion for summary judgment is due to be GRANTED as to any purported due process claims.

### c. To the extent Plaintiff purports to bring any state law claims, the Court should decline to exercise supplemental jurisdiction over those claims.

Finally, to the extent Plaintiff purports to bring any state law claims based on the allegations in his Complaint, and because Plaintiff has failed to establish a viable 42 U.S.C.

---

[5] Moreover, "[t]he filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation." *Johnson v. VanBuren*, No. 5:07-CV-102, 2007 WL 2225818, at *3 (N.D. Fla. Aug. 1, 2007) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951–53 (2d Cir. 1986)).

§ 1983 claim against any Defendants, the Court should decline to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

### V. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Report (Doc. 10), which the Court construes as a motion for summary judgment, be GRANTED;

2. Judgment be ENTERED in favor of Defendants on all federal claims; and

3. Any remaining state-law claims be DISMISSED without prejudice.

It is further ORDERED that, by **August 28, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo

15

determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    DONE this 14th day of August, 2023.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE